UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALEXANDER NAM RIOFTA,

          Petitioner,

  v.

DAN PACHOLKE,

          Respondent.

No. C07-5489 BHS/KLS

ORDER GRANTING PETITIONER'S MOTIONS TO CONDUCT ADDITIONAL DNA TESTING AND CONTINUE STAY

Before the court are Petitioner's Motions for Discovery (DNA Testing) and Motion to Continue Stay to Conduct Further Post Conviction DNA Testing. ECF Nos. 36 and 37. Respondent opposes the additional DNA testing and stay. ECF Nos. 38 and 39. Having carefully reviewed the motions, opposition, and balance of the record, the court finds that the motions should be granted.

**BACKGROUND**

Mr. Riofta filed a "protective" habeas petition on September 13, 2007. ECF No. 1. On March 18, 2008, the court granted Petitioner's Motion for a Stay and Abeyance pending the final resolution of his state court proceedings. ECF No. 27. On July 10, 2009, Mr. Riofta filed a motion to lift the stay. ECF No. 28. On July 21, 2009, Pierce County Prosecuting Attorney Gerald Horne agreed to allow post conviction DNA testing. On July 28, 2009, this court granted Petitioner's request to withdraw his motion to lift the stay and continue the stay of his habeas proceedings pending completion of the post conviction DNA analysis and testing. ECF No. 31.

ORDER - 1

The court ordered the stay continued pursuant to the parties' agreed stipulated motions to stay on November 23, 2009 and again on February 24, 2010.  ECF Nos. 33 and 35.

Mr. Riofta was convicted of first degree assault based on the eyewitness identification of the seventeen-year-old victim.  He argues that there are facts tending to suggest that the identification was uncertain and inaccurate, that there is no physical evidence linking him to the crime, and that the police were unable to find a weapon at his resident, any fingerprints at the crime scene, or any evidence in the stolen vehicle used in the assault indicating that Mr. Riofta committed this crime.  ECF No. 36, p. 2.  The only item of physical evidence left at the crime scene was a white hat which the victim identified as having been worn by the person who shot at him.  The hat was discarded at the scene and placed into evidence by the police.

The white hat was recently subjected to STR DNA testing, but a full 13 loci STR DNA profile could not be obtained from the white hat.  The Innocence Project NW Clinic (IPNW Clinic), counsel for Petitioner, had an independent lab retest the white hat using more sensitive STR DNA testing methods.  While additional information was obtained, the lab was also unable to obtain a full 13 core loci DNA profile.  Prior to this testing, an analyst from the Washington State Patrol Crime Laboratory located two apparent hairs/fibers on the white hat which have never been subjected to DNA testing.  If either of the hairs has a fleshy root attached, the roots can be subjected to STR DNA testing.  A DNA profile from an STR DNA test can be uploaded into either the local or national CODIS databank if the profile contains enough information.  These apparent hairs remain in the custody of the State.  ECF No. 36, p. 3.

Mr. Riofta believes there is a strong likelihood that DNA testing of the apparent hairs found on white hat could likely result in a match with a DNA profile in Washington's Combined DNA Index System (CODIS).  ECF No. 36, p. 4.  This belief is based on evidence provided by

Kristi L. Minchau, the attorney representing Jimmee Chea, in the Trang Dai murder case.[1] Ms. Minchau relayed to the Attorney General during Mr. Riofta's appellate proceedings that her client told her the actual assailant was not Mr. Riofta, but a violent offender previously convicted in the State of Washington. *Id.* (Exh. C). DNA testing of the apparent hairs found on the white hat resulting in a CODIS "hit" will provide Mr. Riofta with scientifically reliable evidence to support his claim that his trial counsel was ineffective in not requesting that the hat or any hairs found on the hat be tested in light of the weakness of the state's case, and in light of Mr. Riofta's protestations of innocence. It will provide Mr. Riofta with scientifically reliable evidence that his right to due process was violated by the State's withholding of potentially exculpatory evidence. ECF No. 36, p. 4.

Respondent argues that that further testing is not warranted as two rounds of DNA testing of the white hat by the Washington State Patrol Crime Laboratory and NMS Laboratory revealed no exculpatory evidence, that further testing should not be done at state expense, and that Respondent does not have control over the DNA testing or the apparent hairs. ECF No. 38, pp. 1-2. Respondent also argues that Petitioner fails to explain why he has not submitted his own DNA sample and what further analysis of the hair will prove as it is undisputed that at the time of the crime in 2000, Petitioner had a completely shaved head. *Id.*, p. 2.

Petitioner replies that the IPNW Clinic has agreed to pay any and all future costs associated with the requested testing. ECF No. 40, p. 3. Petitioner previously sent a reference sample to the WSPCL for comparison purposes but due to the mixed DNA sample, fifty percent

---

[1] At Mr. Riofta's trial, the State sought to make a connection between the Traing Dai murder cases and the shooting of the victim. The victim was the brother of a Traing Dai defendant who had agreed to cooperate with the State and turn State's witness. The State claimed that Mr. Riofta, who had newspaper articles about the Traing Dai cases and referred to the defendants as his "homeys" shot the victim to send a message to his brother not to cooperate. ECF No. 36, p. 4 fn. 5.

ORDER - 3

of the population (including Petitioner) was included as a possible contributor to the mixture. Because the IPNW Clinic is shouldering the costs, it did not request another reference sample until a full STR DNA profile could be obtained in order to make a meaningful comparison. *Id.*, p. 2. Further, based on Ms. Minchau's letter, another individual who has a felony conviction in Washington State committed the crime. Thus, any STR DNA profile obtained from the apparent hairs can be uploaded into CODIS to help establish the identity of the actual perpetrator. *Id.*, p. 3. Moreover, because the victim was never able to say whether his assailant had hair or not, if it is determined that the hairs came from the assailant, an STR DNA profile from the hairs could provide a match in the CODIS databank proving beyond all doubt who committed the crime. *Id.*, p. 4.

## DISCUSSION

Rule 6(a) of the Rules Governing § 2254 Cases states that "a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rules Governing § 2254 Cases, Rule 6(a); see also Fed. R. Civ. P. 81(a)(4) (stating that the Federal Rules of Civil Procedure apply to proceedings for habeas corpus).[2] Good cause for discovery exists "where specific allegations before the court show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969).

Although it is generally within a district court's discretion to grant or deny discovery requests under Habeas Corpus Rule 6, denying a petitioner's request for DNA testing has been

---

[2] Rule 6(a) discovery may be granted before an evidentiary hearing has been granted. See *Jones v. Wood*, 114 F.3d 1002, 1008-09 (9th Cir. 1997).

ORDER - 4

found to be an abuse of such discretion. *Toney v. Gammon*, 79 F.3d 693 (8th Cir. 1996). In *Toney*, the Eighth Circuit found the petitioner had shown good cause for discovery under Rule 6 through his claims that he was innocent of the crime and that his counsel was ineffective for failing to pursue his claim of mistaken identity or to obtain state' evidence so as to conduct scientific examinations. The court reasoned that Toney was entitled to have access to this evidence through discovery in order to prove the prejudice prong of his ineffective assistance claim. See also, *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995) (quoting *Townsend v. Sain*, 372 U.S. 293, 322 (1963)) (district court's "blanket denial of a discovery request is an abuse of discretion if discovery is 'indispensable to a fair, rounded, development of the material facts.'")

Mr. Riofta's request for federal habeas relief is partly based on the claim that his counsel's failure to seek DNA testing violated his Sixth Amendment right to effective assistance of counsel. In order to prove such ineffective assistance of counsel, Mr. Riofta must show that his counsel's performance was deficient and that such deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Mr. Riofta seeks to establish that the outcome of his trial would have been different had the DNA tests been conducted.

Mr. Riofta is requesting to be allowed to have an expert determine if further STR DNA testing is appropriate and, if appropriate, to be permitted to conduct STR DNA testing. The testing will be done at defense expense. *See, e.g., Thomas v. Goldsmith*, 979 F.2d 746 (9th Cir. 1992). Petitioner has shown good cause that the evidence sought would lead to relevant evidence regarding his petition. *Calderon v. United States Dist. Ct.*, 144 F.3d 618, 622 (9th Cir. 1998) (quoting *McDaniel v. United States Dist. Ct.* ("Jones"), 127 F.3d 886, 888 (9th Cir.1997) (finding "good cause" when the requested discovery would bolster petitioner's constitutional claim and that claim was not "'purely speculative or without any basis in the record.'")

ORDER - 5

Moreover, despite his protest that the State is in control of the evidence, the Respondent is under an obligation to turn over exculpatory evidence relevant to the instant habeas corpus proceeding. *Thomas v. Goldsmith*, 979 F.2d 746, 749-750 (9th Cir. 1992) ("[w]e do not refer to the state's past duty to turn over exculpatory evidence at trial, but to its present duty to turn over exculpatory evidence relevant to the instant habeas corpus proceeding.").

As noted by the Ninth Circuit in *Thomas,* under the circumstances, fairness requires that Respondent assist Petitioner in obtaining the potentially exculpatory evidence (white hat and two apparent hairs) for further testing.

Accordingly, it is **ORDERED:**

1) Petitioner's motions (ECF Nos. 36 and 37) are **GRANTED**.

2) Petitioner and Respondent shall cooperate in obtaining the white hat and two apparent hairs and in coordinating further DNA testing at Petitioner's expense.

3) Mr. Riofta shall publish the results of any additional post conviction DNA testing to this court and all parties and shall move to lift the stay within 30 days upon receiving the STR DNA testing results.  If further additional post conviction DNA testing is found not to be warranted, Mr. Riofta shall move to lift the stay within 30 days upon receiving notification that no additional testing is warranted.

DATED this 3rd day of November, 2010.

Karen L. Strombom
United States Magistrate Judge

ORDER - 6